Jason Jerome Greene
Military Justice Firm, PLLC
WA Bar #54011 (admitted pro hac vice)
701 5th Avenue, Suite 4200; Seattle, Washington 98104
360-861-6476 | Jason@militaryjusticefirm.com
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ignatius M. Tee, Jr.**<br>Petty Officer First Class, U.S. Navy<br><br>                              Plaintiff,<br>                v.<br><br>**Shannon M. Shea**<br>Colonel, U.S. Marine Corps<br><br>**Carlos Del Toro**<br>The Secretary of the Navy<br><br>                              Defendants. | **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION

1.  On November 21, 2023, defendant Colonel Shea convened a formal board of officers, called a performance review board (PRB), to adjudicate an allegation of misconduct against plaintiff, to wit: having inappropriate relationships with fellow Navy college students.

2.  The PRB was a Star Chamber court. It grossly violated several Navy regulations.

3.  It was so bad that plaintiff had to be driven from the PRB to a military medical facility for evaluation and treatment.

4.  PRB #1 was recently dissolved on appeal, sua sponte, by defendant Colonel Shea.

5.    However, Colonel Shea simultaneously ordered a new, de novo PRB #2, scheduled to convene on **May 16, 2024**.

6.    For PRB #2, defendant is doing bad things again which violate Navy regulations and will irreparably harm plaintiff. Plaintiff comes to the court for a limited, narrowly tailored remedy: An injunction enjoining Col Shea from conducting PRB #2 – but only unless and until defendant Col Shea obeys the Navy's own regulations governing PRBs.

7.    Due to the serious and rare facts of this case, waiting for post-PRB review would be extremely, and irreparably, dangerous.

8.    Prior to PRB #1, Plaintiff had invoked several of his rights codified in Navy regulation NSTC M-1533.2E, including to discovery of the evidence against him. However, defendant and his staff either denied or interfered with those requests, or both.

9.    Plaintiff had: no counsel, a panel of empaneled board members who were disqualified by regulation, he was never shown the evidence against him even at the board, and he was barely even told what the evidence was save for a few vague on-the-spot interrogation questions.

10.    PRB #1 devolved into the board of four commissioned officers, which included Colonel Shea's executive officer, Commander Angela Gonzalez, interrogating plaintiff about vague allegations, and unbecomingly calling plaintiff names like "slimy" and telling him that his repeated pleas of innocence, which was all he had to defend himself with, were: " . . . bullshit . . . bullshit . . . bullshit."

11.    Per U.S. Navy regulations: "[A] PRB shall be conducted with formality and decorum." NSTC M-1533.2E § 6-9; Appx. F at 1-1.

12.    Defendant has appointed the same board member who verbally assailed plaintiff in PRB #1, as a member in PRB #2.

13.    As it turns out, at least some of plaintiff's testimony was not b*******. The undersigned attorney recently discovered, identified, and spoke with the

government's primary, secret witness, a female freshman midshipman. She reports that not only does she disagree with the allegations against plaintiff, but that members of the command actively tried to sway her testimony against plaintiff. These are massive revelations that exculpate plaintiff.

14. Defendant Colonel Shea is actively blocking that crucial witness's testimony from ever seeing the light of day at PRB #2, contrary to NSTC M-1533.2E.

15. Defendant Colonel Shea, and the board members under his command, were not just disloyal to plaintiff's rights, but they actively thwarted plaintiff's attempts to avail himself of those rights. He had no counsel, there was no investigation, he was not informed of the allegations against him, they refused to show him the "evidence," the board members were all disqualified by regulation, and he was threatened by a commissioned officer, LT Lee, that if he invoked his right to remain silent he would be forced to talk – all in egregious contravention of NSTC M-1533.2E.

16. The PRB recommended the harshest outcome within its jurisdiction: permanent disenrollment from the NROTC seaman-to-admiral program.

17. On April 22, 2024, defendant Colonel Shea, without allowing plaintiff his appeal, and without a final decision on PRB #1 by the cognizant admiral (Commander, NSTC), issued a sua sponte order summarily terminating appellate review, dissolving by verbal decree PRB #1, and ordering plaintiff to undergo a new PRB, de novo (PRB #2).

18. Defendant Colonel Shea has demonstrated that he intends to put plaintiff through these rigorous, unlawfully-conducted, expensive, psychologically-draining PRBs, PRB after PRB after PRB, until Colonel Shea feels like he has the sustainable findings he wants against plaintiff – all while plaintiff is a full-time student expected to maintain high enough grades to remain in the seaman-to-admiral program.

19. Plaintiff comes to the court as a last resort. He requests a simple, meager, narrowly tailored judicial intervention: A TRO enjoining defendant from convening another PRB *until* defendant simply follows Navy regulations governing PRB due process, and a preliminary and permanent injunction.

## JURISDICTION AND VENUE

20. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

21. This court has jurisdiction to consider the administrative decisions of a military commander to determine whether that commander has violated the military's own regulations. Denton v. Secretary of the U.S. Air Force, 483 F.2d 21 (9th Cir. 1973).

22. Venue is appropriate in this court under 28 U.S.C. § 1391(e).

## PARTIES

23. Plaintiff is a petty officer first class (PO1), paygrade E-6, on active duty in the U.S. Navy. He also has the dual title of an officer candidate (OC). He has been on continuous active duty for nearly 9 years. He resides in Tucson, Arizona. He is currently enrolled in the U.S. Navy's prestigious, highly competitive "seaman-to-admiral" program (STA-21). This week he finished his junior year at the University of Arizona.

24. Defendant, Shannon Shea, is a Colonel (Col), paygrade O-6, on active duty in the U.S. Marine Corps. The Marine Corps falls under the Department of the Navy. He is the commanding officer (CO) of the U.S. Navy NROTC unit at the University of Arizona. As CO, he also has the dual title as plaintiff's professor of naval science (PNS) which is the title most-used in the Navy regulations at issue. He is sued only in his official capacity as plaintiff's CO and PNS; he is not sued in his personal capacity.

25. Defendant, Carlos Del Toro, is the Secretary of the Navy (SECNAV). He has original authority over the STA-21 program and regulations in this case. He is sued only in his official capacity as SECNAV over plaintiff; he is not sued in his personal capacity.

## VERIFIED FACTS

### Facts Pertinent to All Counts

### *Background*

26. Plaintiff enlisted in the Navy in 2015. He is currently enrolled in the seaman-to-admiral program (STA-21). As a STA-21 student, he remains on active duty as a full-time college student while the Navy continues to pay him, pays for his tuition and expenses, and commissions him upon graduation.

27. Plaintiff has no prior courts-martial or Article 15 UCMJ nonjudicial punishment.

28. Plaintiff's evaluation dated March 30, 2022, as he wrapped up his job as a drill instructor and headed to STA-21, indicated the following: in all performance traits he either rated "above standards" or "greatly exceeds standards," that he should be promoted early, and that he is: a "consummate professional who inspires peers and subordinates alike!", a "proven leader," an "astute manager," a "community ambassador," and "consistently exceeds expectations and ensures mission success!" The evaluation closes that plaintiff "will be an asset to any wardroom [commissioned officer corps]!"

### *Pre-PRB #1*

29. The primary regulation at issue is NSTC M-1533.2E. It is issued by Commander, Naval Service Training Command (NSTC) – a rear admiral. NSTC is defendant Col Shea's immediate superior commander. The regulation preface reads: "commanding officers . . . are directed to comply with this manual, pursuant to

Title 10, U.S. Code, Chapter 103 . . . These regulations are binding on all personnel assigned to NROTC units and Departments of Naval Science."

30. On November 9, 2023, Col Shea signed an order entitled "Performance Review Board Convening Order" for PRB #1. The document was served on plaintiff the same day by LT Lee, plaintiff's class advisor and the officer appointed to be the recorder (essentially the prosecutor) of PRB #1. The sole allegation contained therein is: "inappropriate relationships with midshipmen within the battalion."

31. Plaintiff requested LT Lee allow him to consider consulting counsel prior to signing his elections and waivers of rights form.

32. LT Lee denied his request and ordered plaintiff to execute his elections.

33. LT Lee further informed plaintiff that if he retains counsel or remains silent, "it doesn't matter, we can order you to speak, and if you refuse our orders to speak it will look worse on you," or words to that effect.

34. Plaintiff was subject to the Uniformed Code of Military Justice (UCMJ) and enjoyed a right to remain silent and to counsel under Article 31, UCMJ (10 U.S.C. § 831).

35. It is a punitive criminal offense under the UCMJ for an officer to interfere with a member's rights under Article 31.

36. On November 16, 2023, plaintiff met again with LT Lee.

37. Plaintiff requested that LT Lee provide him with a copy of all evidence that would be presented against him at the PRB.

38. LT Lee denied plaintiff's request.

39. NSTC M-1533.2E § 6-10, requires "conducting a preliminary inquiry in cases involving disciplinary matters."

40. NSTC M-1533.2E § 6-10, commands defendant Col Shea to: "Provide the student with any and all documents that may be presented in the case against the student, including but not limited to the PRB Convening Order, counseling sheets, witness statements, and a complete copy of the preliminary inquiry (if any)."

41. No preliminary inquiry was conducted prior to PRB #1.

42. No counseling sheets, witness statements, or copies of the preliminary inquiry were ever provided to plaintiff for PRB #1. No evidence was ever provided to him.

**PRB #1 – The Proceeding**

43. PRB #1 was held on November 21, 2023, aboard the Navy ROTC Unit in Tucson.

44. Plaintiff was alone, without counsel, without witnesses, without the allegations against him, and without any of the evidence against him.

45. All 3 of the voting members had prior involvement in the matters before the board.

46. NSTC M-1533.2E § 6-10, commands that no member be appointed to the board unless they have no prior involvement with the matters before the board.

47. During PRB #1, the 4 board members had a secret document they kept referencing as they interrogated plaintiff relentlessly about the mystery allegations. They never showed plaintiff the secret document.

48. The members interrogated plaintiff in scattershot style about the mystery allegations, vaguely, which appeared to be that plaintiff communicated on an overly-friendly basis with female freshmen in the ROTC program, his fellow students, which the members alleged was inappropriate.

49. A member, LT Mohan, told plaintiff that his conduct was slimy.

50. Throughout PRB #1, plaintiff repeatedly denied the vague allegations they had sprung on him, saying things like: "Sir, I did not attend any social gatherings or anything for personal reasons with any trainee . . . Sir, I didn't make any sexual innuendos whatsoever because I did not make that statement towards her . . . No sir not even close not even something that could be possibly misinterpreted, no . . . Ma'am, gentlemen, I understand all the things that have been said. But I mean it when I say that I did not, I'm not involved in any of that . . . "

51. A member, LT Mohan, responded to plaintiff's desperate pleas: "if it looks like bullshit, smells like bullshit, it's probably bullshit."

52. "[A] PRB shall be conducted with formality and decorum." NSTC M-1533.2E, § 6-10; Appx. F.

53. Most of the board's interrogation surrounded plaintiff's alleged communications with a freshman midshipman (MIDN), MIDN X.Y.H.

54. On April 24, 2024, MIDN X.Y.H. informed the undersigned attorney that plaintiff was, actually, always professional and never showed any romantic interest in her, and that members of the command tried to persuade her to change her testimony to say that plaintiff is creepy, unprofessional, and suspicious. She refused. She specifically requested plaintiff as her mentor because she admired his commitment to his mentees. She feels that plaintiff has not been fairly treated in this case, and that she was "dragged along for the ride" in the allegations against plaintiff. She feels that plaintiff gave both his male and female mentees the same attention, and she is confused why the command is doing all of this to plaintiff.

55. After interrogating plaintiff, the board deliberated and then announced its findings that plaintiff "did pursue or attempt to pursue inappropriate relationships with [midshipmen] within the battalion and [] did not meet aptitude standards . . . [and] recommends Leave of Absence Pending Disenrollment."

*Post-PRB #1*

56. After PRB #1, plaintiff was so visibly traumatized by the deprivation of rights, ruthless interrogation, and degrading insults levied by the board members, that a superior officer had to ask him about his psychological state and about whether he wanted to hurt himself or others. Plaintiff, in a bewildered, semi-catatonic state, responded, eerily, "I don't know."

Verified Complaint          Page 8 of 21

57. Plaintiff was then taken by driver to a military mental health facility for evaluation and treatment from what the PRB members did to him.

58. Plaintiff was so traumatized from the PRB members' conduct that he had to be put on a temporary weapons profile that prohibited him from handling weapons and required him to surrender his personal sidearm.

59. A PRB's findings are not final. There is a multi-step appeal process ending with an admiral at NSTC as the final decider. On December 13, 2023, the undersigned filed an appeal to PRB #1 on plaintiff's behalf pursuant to regulation. Therein, counsel argued that PRB #1 was fatally flawed due to massive structural errors, alleging several due process violations of rights specifically delineated in and required by NSTC M-1533.2E, including:

- the board members were all disqualified,
- the board failed to conduct a preliminary inquiry (pre-board investigation),
- the board failed to give plaintiff a copy of the preliminary inquiry report,
- the board failed to provide plaintiff with a "trigger document,"
- the command deprived plaintiff of his right to any evidence against him,
- the board recorder denied plaintiff his right to counsel,
- the board recorder interfered with plaintiff's elections of his rights, and
- the board forced plaintiff to speak, in violation of 10 U.S.C. § 831

60. The rebuttal further reads: "The board devolved into a Star-Chamber like proceeding harkening back to the days of 17th century England – a 4-on-1 free-for-all where the OC had none of the evidence and the board members, who are supposed to be neutral judges, were also the witnesses against him. They took turns tag-teaming their interrogation of the OC, armed with the personal knowledge they obtained from their involvement in the case."

Verified Complaint          Page 9 of 21

**Facts Pertinent to Count I**

61. Over four months later, on April 22, 2024, Col Shea dissolved PRB #1, sua sponte, and issued a convening order for PRB #2.

62. NSTC M-1533.2E §§ 6-13(3) and Appx. G, required defendant Col Shea to issue an endorsement to the board's report regardless of his intended actions, to then provide plaintiff with 5 business days to file a response, and to then send any "unfavorable" decision to the admiral, Commander, NSTC, for appellate adjudication. NSTC M-1533.2E §§ 6-13(3); Appx. G.

63. Defendant Col Shea never issued an endorsement on PRB #1's report.

64. Instead, Col Shea sua sponte dissolved PRB #1 altogether.

65. Col Shea simultaneously issued a convening order for a de novo PRB #2.

66. Defendant Col Shea's decision, as PNS, to dissolve PRB #1 and put plaintiff through a de novo PRB #2, was "unfavorable." NSTC M-1533.2E § 6-13(3) and Appx. G, do not authorize Col Shea to dissolve PRB #1 sua sponte, without adhering to the due process procedures therein provided, including the appeals process.

67. Defendant Col Shea's actions to deprive plaintiff of his appellate rights clearly and indisputably violates NSTC M-1533.2E §§ 6-13(3), Appx. G, and Appx. P.

68. Defendant Col Shea's unlawful action on the appeal of PRB #1 amounts to deprivation of an administrative due process remedy available to plaintiff.

69. The PRB appeal process is illustrated in NSTC M-1533.2E 28, Appendix G, in the flowchart below.

## Facts Pertinent to Count II – failure to provide evidence

70. This time around, for PRB #2 a preliminary inquiry was conducted. Plaintiff was provided with a copy of the preliminary inquiry report.

71. However, the report is so heavily redacted that plaintiff is unable to meaningfully do anything with it. All names are redacted.

72. On April 26, 2024, the undersigned attorney requested that defendant Col Shea and his staff provide plaintiff with a complete, unredacted copy of the preliminary inquiry report as required by regulation. The undersigned offered to sign a protective order over the documents and even provided defendant with a draft

protective order for his convenience. CDR Gonzales, for defendant, refused, but offered plaintiff a chance to review the 20-page report unredacted in person, but only if he agreed to not take notes or otherwise reproduce the document. The undersigned objected further, emphasizing that plaintiff cannot possibly be expected to memorize all the names and other information in the document in one sitting, and then be able to meaningfully do anything with that information.

73. The unit's staff judge advocate, LT Savannah Smidt, JAG Corps, an attorney and the defendant's legal adviser, wrote to the undersigned: "OC Tee is not entitled to an unredacted copy of the investigation."

74. Plaintiff is entitled to it. NSTC M-1533.2E § 6-10(6a2), commands that no later than 5 business days before the PRB: "Provide the student with **any and all** documents that may be presented in the case against the student, including but not limited to the PRB Convening Order, counseling sheets, **witness statements**, and a **complete copy** of the preliminary inquiry." (Emphases added).

75. The word "complete" means: "something is full or finished and is not lacking in any way and is a complete copy or a complete legal title." *Black's Law Dictionary*.

76. The word "complete" also means: "having all parts or elements; lacking nothing; whole; entire; full." See, www.dictionary.com.

77. The heavily redacted copy of the preliminary inquiry provided to plaintiff is not complete.

78. The document does not contain classified information.

**Facts Pertinent to Count III**

79. NSTC M-1533.2E gives plaintiff the rights to call witnesses on his own behalf and to question those witnesses. The regulation notes that plaintiff's attorney may not examine or cross-examine the witnesses, and that plaintiff must do so on his own. Plaintiff may have the assistance of counsel, however counsel may only

provide an opening statement and closing argument, assist plaintiff, and may object at any point during the board.

80. Plaintiff is currently under a written "no contact order" issued by defendant Col Shea some 6 months ago and renewed recently, which orders him to be banished from the unit, and which reads: "you are hereby ordered not to have any contact or communication whatsoever with the below individuals and groups, either directly or through a third party, unless you first request and receive a waiver in writing from me: a) Any Officer Candidate assigned to the NROTC, University of Arizona for matters related to your Performance Review Board or other administrative matters; b) Any Midshipmen assigned to the NROTC, University of Arizona, c) For purposes of this order, the term "communication" includes, but is not limited to: communication in person, through a third party . . . "

81. Defendant Col Shea's no contact order contravenes NSTC M-1533.2E by prohibiting plaintiff from presenting and questioning witnesses at PRB #2.

82. Defendant Col Shea's no contact order contravenes NSTC M-1533.2E by prohibiting plaintiff from meaningfully conducting due diligence to identify, contact, and request the participation of witnesses.

83. Defendant Col Shea's no contact order purports to prohibit even plaintiff's attorney, the undersigned, from communicating with potential witnesses.

84. That no contact order is unlawful under well-established military law. See, U.S. v. Aycock, 35 C.M.R. 130 (U.S. C.M.A. 1964) ("an accused may not, by means of military orders, be required not to contact the witnesses concerned with the charges against him . . . [even if] there was apparently some belief that he might engage in intimidating practices or forbidden means in order to secure his end. Be that as it may, ample remedies are available to prevent such misconduct or, if committed, to punish it severely.").

85. The preliminary inquiry recommended judicial (court-martial) action in this case.

Verified Complaint          Page 13 of 21

86. The undersigned recently asked CDR Gonzalez to verify whether court-martial had been ruled out, and she declined to so verify. Therefore, plaintiff is under both administrative and judicial jeopardy, and he has the right to, and for his counsel to, reach out to witnesses to prepare to defend himself.

**Irreparable Harms Common to All Counts**

87. Putting plaintiff through PRB #2, on these facts, would be detrimental to plaintiff's psychological and emotional health.

88. Putting plaintiff through PRB #2, on these facts, has an increased risk of causing plaintiff's suicide due to the trauma plaintiff sustained from the unlawful first PRB.

89. The PRB process, itself, puts any respondent to a PRB through some level of emotional and psychological harm.

90. The mere stress of litigation, especially in a military context, is not sufficient for an injunction.

91. Here, however, that harm increases extraordinarily, and dangerously, where the commanding officer and PNS sends plaintiff through a PRB while depriving plaintiff of the rights, protections, and due process required by regulation to protect him – for a second time – while actively thwarting plaintiff's right to appellate review of the case by Commander, NSTC.

92. Further, that distress increases extraordinarily, and dangerously, on the heels of PRB #1 which was nothing short of an unprofessional, unbecoming, derelict "board" that traumatized plaintiff so badly that he had to be treated for psychological damage caused by the board members, and suicidal ideation, where they broke him.

93. The risk of these harms is near-certain going into PRB #2, unless plaintiff is armed with the rights that he is required to be afforded under NSTC M-1533.2E.

94. That kind of harm is enough to make a reasonable, otherwise healthy person consider killing themselves.

Verified Complaint        Page 14 of 21

95. Death by suicide due to abuse of your rights by your commanding officer, and by being rammed through a faux legal process with faux rights, is harm. That harm is irreparable.

96. Given the unique web of unlawful orders imposed on plaintiff's rights by defendant, the secret witness's testimony will never be heard without this court's injunctive relief.

97. The due process violations here, when combined, uniquely shock the conscience and notions of justice. Together, they will assuredly result in a PRB #2 that is certain to find the allegations substantiated due to the painfully skewed evidence. As a result, plaintiff will be labeled a "slimy," "creepy" pervert and his reputation, especially as a Naval officer or petty officer, will be forever irreparably tarnished.

98. Without injunctive relief, plaintiff will definitely suffer reduced effective assistance of counsel. The CO's no contact order is so unjustly broad that it purports to sweep the undersigned attorney up into its breadth, prohibiting the undersigned from contacting witnesses.

99. Plaintiff has a protected property and liberty interest in his reputation.

100. Plaintiff has a protected property and liberty interest in completing his college education.

101. Plaintiff has a protected property and liberty interest in his forthcoming commission.

**Inadequacy of Remedy for All Counts**

102. The appellate review process for a PRB by Commander, NSTC, as provided for in NSTC M-1533.2E, creates an administrative remedy for plaintiff.

103. However, it is not an adequate remedy here.

104. Defendant Col Shea has actively eliminated that process by fiat. See, Count I.

105. As it stands, Col Shea will keep putting plaintiff through PRB after PRB after PRB until he gets the result he wants, with no appellate review. This is

administrative structural error. The very appellate remedy provided to plaintiff is being ignored by defendant.

## COUNT I

### Violation of NSTC M-1533.2E §§ Appx. G; 6-13(3); Appx. P, ¶7; (deprivation of appellate rights)

106. Plaintiff realleges and restates paragraphs 1-105 as if fully rewritten herein.

107. The U.S. Navy is required to follow its own U.S. Navy Regulations.

108. NSTC M-1533.2E § Appx. G and § 6-13, read together, require defendant to allow plaintiff to submit an appeal, and then after defendant makes his endorsement, allow plaintiff to rebut the endorsement, before the entire case is elevated to NSTC for appellate review.

109. NSTC M-1533.2E § Appx. G clearly requires any "unfavorable" decision by the PNS, defendant Col Shea, to be elevated to NSTC.

110. Defendant Col Shea's desire to dissolve PRB #1 and force plaintiff through PRB #2 is "unfavorable."

111. NSTC M-1533.2E § 6-13(3)-(4) states: "the PNS will consider the package in its totality and endorse the board report, either concurring or non-concurring with the findings and recommendations of the board in the PRB PNS Recommendation Letter . . . The student shall be given a copy of the PNS's endorsement, and the student will be given up to five full business days to respond to the recommendations in the PNS's endorsement."

112. Defendant violated NSTC M-1533.2E § 6-13(3), by summarily dissolving PRB #1 without writing an endorsement.

113. Defendant violated NSTC M-1533.2E § 6-13(4), by not allowing plaintiff to respond to his unfavorable intention to dissolve PRB #1 and convene PRB #2.

114. NSTC M-1533.2E § 6-13(4) provides plaintiff with an administrative remedy.

115. Col Shea deprived plaintiff of his right to that administrative remedy.

116. If PRB #2 is allowed to proceed without adherence to this regulation, there will never have been a proper review, endorsement, rebuttal, and appeal process, and no lawful final adjudication on PRB #1 will ever exist in the record. In fact there will be no record because there was never appellate review.

117. If PRB #2 is allowed to proceed without adherence to this regulation, plaintiff's reputation will be irreparably harmed, and he is highly likely to suffer further emotional and psychological trauma on top of the trauma already induced by PRB #1.

118. There is no other adequate remedy available to plaintiff.

119. <u>Remedy</u>: Plaintiff respectfully requests the court issue a narrowly tailored injunction, to wit: enjoining defendant from conducting PRB #2 or any other PRB, unless and until defendant complies with NSTC M-1533.2E NSTC M-1533.2E §§ Appx. G; 6-13(3); Appx. P, ¶7; by providing an endorsement on PRB #1 and a response period for plaintiff, and appellate review by NSTC.

## COUNT II

### Violation of NSTC M-1533.2E § 6-10(6a2)
### (unlawful withholding of discovery )

120. Plaintiff realleges and restates paragraphs 1-119 as if fully rewritten herein.

121. NSTC M-1533.2E § 6-10(6a2), requires defendant to: "Provide [plaintiff] with any and all documents that may be presented in the case against the student, including but not limited to the PRB Convening Order, counseling sheets, witness statements, and a complete copy of the preliminary inquiry . . . "

122. Defendant has not provided plaintiff with the unredacted witness statements.

123. Defendant has not provided plaintiff with a complete copy of the preliminary inquiry.

124. The redactions render the copy of the preliminary inquiry to be not "complete."

Verified Complaint          Page 17 of 21

125. The word "complete" means: "something is full or finished and is not lacking in any way and is a complete copy or a complete legal title." *Black's Law Dictionary*.

126. The word "complete" also means: "having all parts or elements; lacking nothing; whole; entire; full." www.dictionary.com

127. Unless plaintiff is provided with a copy of the unredacted preliminary inquiry, he will forever be unable to identify, speak with, and request the presence of witnesses – because he has no idea who most of the witnesses are due to the redactions.

128. As a result, plaintiff lacks fair notice of the allegations against him and lacks the ability to reasonably respond to the allegations.

129. Plaintiff is highly likely to suffer immediate, irreparable harm as discussed above.

130. Plaintiff has no other remedy available because Col Shea has unlawfully denied him his appellate rights, and any remedy there might be is inadequate.

## **COUNT III**

### **Violation of NSTC M-1533.2E §§ 6-11c, Appx. F, Appx. P (unlawful interference with right to present witnesses)**

131. Plaintiff realleges and restates paragraphs 1-130 as if fully rewritten herein.

132. NSTC M-1533.2E gives plaintiff the right to present witnesses and to examine witnesses.

133. Defendant's current no contact order against plaintiff explicitly prohibits plaintiff from exercising his right to present witnesses. Plaintiff cannot present them at the board since he is ordered not to communicate with them. Because he is ordered to not communicate with them, he cannot ask them to attend.

134. Furthermore, even if the witnesses appear at PRB #2, the no contact order prohibits plaintiff from even examining or cross-examining them.

135. Col Shea has no authority to contravene an admiral, Commander, NSTC.

Verified Complaint          Page 18 of 21

136. The no contact order unlawfully interferes with the undersigned attorney's duties under the Rules of Professional Conduct and oath of attorney, by purporting to prohibit the undersigned's client from being involved in communications related to witnesses in his own defense.

137. Military courts have been clear: "A military accused, just as a civilian defendant, has the right to prepare to meet charges pending against him . . . we hold that an accused may not, by means of military orders, be required not to contact the witnesses concerned with the charges against him." U.S. v. Aycock, 35 C.M.R. 130 (U.S. C.M.A. 1964).

138. Defendant Col Shea is currently considering judicial punishment against plaintiff under Article 2, UCMJ, and administrative punishment under Article 15, UCMJ.

139. Plaintiff has been, and remains, under investigation for these alleged offenses.

140. Plaintiff has been, and remains, in military legal jeopardy for these military offenses.

141. The no contact order is unlawful to the extent that it prohibits plaintiff from contacting witnesses for the purpose of speaking with them about their possible testimony and requesting their testimony at the PRB.

142. The no contact order is unlawful to the extent that it prohibits plaintiff from presenting and questioning witnesses at the PRB.

143. The no contact order is unlawful to the extent that it purports to prohibit even the undersigned attorney from carrying out his official duties, as required by law and oath, to identify, speak with, and request the testimony of material fact witnesses.

144. Plaintiff will suffer irreparable harm if the court does not order defendant to obey NSTC M-1533.2E and grant plaintiff his rights to present and question witnesses.

145. Plaintiff has no adequate remedy at law. The primary remedy provided by Commander, NSTC, the right to file an appeal to the defendant's endorsement, as outlined in Count I, above, is being withheld from plaintiff because defendant issued a fiat summarily eliminating plaintiff's appellate rights.

## **PRAYER FOR RELIEF**

Plaintiff prays for a TRO pending a hearing, a preliminary injunction, a permanent injunction, and declaratory relief, as follows:

1. As to Count I: A preliminary and permanent injunction enjoining defendant, the Navy, and its officers, from conducting PRB #2 or any other PRB, unless and until defendant complies with NSTC M-1533.2E §§ Appx. G; 6-13(3); Appx. P, ¶7; by providing an endorsement to PRB #1 with an opportunity for plaintiff to respond in writing within 5 business days, and an appellate decision from Commander, NSTC.

2. As to Count II: A preliminary and permanent injunction enjoining defendant, the Navy, and its officers, from conducting PRB #2 or any other PRB, unless and until defendant complies with NSTC M-1533.2E § 6-10(6a2), by providing plaintiff with a copy of any and all documents that may be presented in the case against him, including but not limited to the PRB Convening Order, counseling sheets, witness statements, and a complete copy of the preliminary inquiry, at least 5 business days prior to the PRB. The word "complete" means without redaction of witness names or statements. The commanding officer may issue a written protective order over the evidence to ensure good order and discipline, provided that it is reasonable and narrowly tailored.

3. As to Count III:
   a. A preliminary and permanent injunction enjoining defendant, the Navy, and its officers, from conducting PRB #2 or any other PRB, unless and until defendant complies with NSTC M-1533.2E § 6-11c, by allowing plaintiff or his counsel a meaningful opportunity to speak with and request the testimony at the PRB of potential witnesses.

b.  A declaration that the no contact order is unlawful and unenforceable, to the extent that it interferes with plaintiff's right to speak with witnesses, request their presence at the board, and to question those witnesses at the board, pursuant to his rights at NSTC M-1533.2E § 6-11c.

c.  A declaration that the no contact order is unlawful and unenforceable, to the extent that it purports to prohibit plaintiff's attorney from carrying out his official duty of identifying, speaking with, and requesting the testimony or statements of witnesses, rights provided to plaintiff at NSTC M-1533.2E § 6-11.

4.  The TRO should state: "Nothing in this temporary restraining order shall be construed to prevent defendants and their officers from convening PRB #2, provided they have complied with the above-cited Navy regulations."

Plaintiff requests any other relief, or modifications of the above relief, that this Court in its discretion deems just and appropriate.

Date: __10 May 2024__

/s/ *Jason J. Greene*
Military Justice Firm, PLLC
WSBA #54011 (admitted *pro hac vice*)
701 5th Avenue, Suite 4200
Seattle, Washington 98104
360-861-6476
Jason@militaryjusticefirm.com

*Counsel for Plaintiff*

Verified Complaint          Page 21 of 21

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ignatius M. Tee, Jr.**<br>Petty Officer First Class, U.S. Navy<br><br>                              Plaintiff,<br><br>v.<br><br>**Shannon M. Shea**<br>Colonel, U.S. Marine Corps<br><br>**Carlos Del Toro**<br>The Secretary of the Navy<br><br>                              Defendants. | **AFFIDAVIT OF<br>VERIFICATION** |

1. I am the plaintiff.

2. I have reviewed the verified complaint. I do hereby swear, under penalty of law, that the factual statements therein are accurate and true to the best of my knowledge and memory. The source of my knowledge is either personal knowledge, from reviewing documents, or from credible sources I have good reason to believe are true.

3. I have reviewed Counts I through III and the cited NSTC regulations and underlying facts, and, as a nonlawyer, I believe those Counts to have a good faith factual basis.

4. Defendants and their officers have been cryptic and have gone out of their way to provide me with as little information as possible. However, the stated facts are as I know them to be as of today.

5. I am not an attorney and therefore I do not adopt, and I defer to counsel, on the legal arguments and assertions in the complaint and their tone, tenor, and deportment. While I do lodge this complaint against my superior officers, I do so with the utmost respect for them, their rank, their position, and with no intention to be disrespectful in any way whatsoever. I regret needing to file this complaint.


I certify that the factual statements in the complaint are verified and true. I understand that making knowingly false statements with the intent to deceive is subject to criminal penalty under both federal civilian law and the UCMJ.

\* \* \*

I, AM1 Ignatius Tee, Jr., U.S. Navy, swear that the above is true and accurate to the best of my knowledge and memory. I understand that this is an official statement and that knowingly stating any falsehoods with the intent to deceive could subject me to trial by court-martial, and, under Article 107, UCMJ, subject me to punishment including confinement for 5 years, and dishonorable discharge, or both, and similar such punishments under civilian federal and state law.

Date and Time: 5/9/2024   4:25pm

Ignatius M. Tee, Jr.
PO1/OC, U.S. Navy

\* \* \*

**State of Arizona**

**County of Pima**

The above oath was signed and sworn to before me on May 9, 2024 at 4:25pm hours in Tucson , Arizona.

Signature

Regina Verdusco
Notary Public
Pima County, Arizona
My Comm. Expires 10-05-27
Commission No. 656616

Regina Verdusco
Printed Name

My appointment expires: 10/05/27