1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Ignatius M Tee, Jr.,                              No. CV-24-00240-TUC-RCC

10                   Plaintiff,                       **ORDER**

11  v.

12  Shannon M Shea, et al.,

13                   Defendants.

14

15         Pending before the Court is Plaintiff Ignatius M. Tee, Jr.'s Emergency Motion for

16  Temporary Restraining Order, Emergency Motion for Leave of Court to Exceed Page

17  Count, and Motion for Order to Show Cause Why Preliminary Injunction Should Not

18  Issue. (Doc. 2.) Plaintiff filed his Complaint and Motion in an emergency posture on May

19  10, 2024. (Docs. 1–2.) The Court set expedited oral argument for Tuesday, May 14,

20  2024. (Doc. 6.) A summons was issued on May 13, 2024 (Doc. 7) and, on May 14, 2024,

21  prior to the scheduled hearing, Defendants appeared and filed their Response in

22  Opposition to Plaintiff's Motion (Docs. 8–9). The Court reviewed the pleadings and

23  attachments and heard argument from the parties.

24      **I.      Background Facts**

25         Plaintiff is a Petty Officer First Class in the United States Navy and is enrolled in

26  the Naval Reserve Officers Training Corps ("NROTC") Seaman-to-Admiral Program

27  ("STA-21") studying at the University of Arizona. (Doc. 1 at 5.) Defendant Shannon M.

28  Shea is a Colonel in the United States Marine Corps, a Professor of Naval Science

1
2
3
4

("PNS"), and Plaintiff's commanding officer ("CO"). (*Id.* at 4.) On November 21, 2023, Colonel Shea convened a Performance Review Board ("PRB") to adjudicate a misconduct allegation against Plaintiff for "inappropriate relationships with midshipmen within the battalion." (*Id.* at 1, 6.)

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

In his Complaint and Motion, Plaintiff alleges that the first PRB did not comply with various due process provisions outlined in the U.S. Navy, Naval Service Training Command ("NSTC") M-1533.2E, Regulations for Officer Development for the NROTC. (*Id.* at 1–2.) Specifically, Plaintiff alleges that the first PRB was unlawful because the board members should have been disqualified as persons involved in the underlying matters; the PRB did not conduct a "preliminary inquiry" (i.e., a pre-PRB investigation) and therefore did not give Plaintiff a copy of the preliminary inquiry report; the PRB failed to provide Plaintiff with a "trigger document"; the command did not provide Plaintiff with the evidence lodged against him; the PRB recorder denied Plaintiff his right to counsel; the PRB recorder interfered with Plaintiff's elections of his rights; and the PRB forced Plaintiff to speak in violation of his right to remain silent in 10 U.S.C. § 831. (*Id.* at 9.) Plaintiff avers that, during the proceeding, he was "alone, without counsel, without witnesses, without the allegations against him, and without any of the evidence against him[,]" and the PRB questioned him with vague allegations while one of its members, Lt. Mohan, said he was "slimy" and characterized Plaintiff's responses as "bullshit." (*Id.* at 7–8.) Plaintiff asserts that the first PRB was so traumatic that Plaintiff required psychological and medical attention afterwards.  (*Id.* at 1–2.) After deliberating, the PRB announced its finding that Plaintiff "did pursue or attempt to pursue inappropriate relationships with [midshipmen] within the battalion and [] did not meet aptitude standards" and recommended a "Leave of Absence Pending Disenrollment." (*Id.* at 8.)

26
27
28

PRBs are administrative proceedings, but their recommendations are not final. (Doc. 1-2 at 15, 43.) NSTC M-1533.2E Appendix G outlines a multi-step "Chain of Appeal" that follows a PRB. (*Id.* at 43.) NSTC M-1533.2E Sections 6-13(1)–(2) explain

1
2
3

that the recorder prepares a PRB Report, which is then given to the student who is "afforded an opportunity to agree/dispute the proceedings and five full business days to provide a written response to the PNS." (*Id.* at 21.) The regulation continues:

4
5
6
7
8
9

> 3. <u>PNS Endorsement.</u> Once the student has had an opportunity to respond to the PRB report, the PNS will consider the package in its totality and endorse the board report, either concurring or non-concurring with the findings and recommendations of the board in the PRB PNS Recommendation Letter (Example 6-J) . . . . The student shall be given a copy of the PNS's endorsement, and the student will be given up to five full business days to respond to the recommendations in the PNS's endorsement.

10
11
12

(*Id.*) The next step for disenrollment recommendations is to send the PNS Endorsement up the "Chain of Appeal," which culminates in the NSTC Commander making the ultimate disenrollment decision. (*Id.* at 22, 43.)

13
14
15
16
17
18
19
20
21

Upon receiving the PRB Report, Plaintiff, who had by then retained counsel, sent via counsel a Response to Colonel Shea that outlined Plaintiff's objections to the way the PRB unfolded and its disenrollment recommendation. (Doc. 1 at 9.) Colonel Shea did not issue a PNS Endorsement on the PRB Report; instead, he terminated the first PRB by issuing a convening letter for a second PRB. (*Id.* at 3, 10.) In effect, Colonel Shea erased the first PRB and halted any movement in the "Chain of Appeal." Plaintiff asserts that, in so doing, Colonel Shea usurped Plaintiff's ability to seek appellate review in front of the NSTC Commander who ought, in Plaintiff's view, to be the authority to decide whether to convene a second PRB. (*Id.* at 10.)

22
23
24
25
26
27
28

The second PRB is scheduled for May 16, 2024. (*Id.* at 2.) This time, a preliminary inquiry has been completed, but the report given to Plaintiff included redactions of the witness names. (*Id.* at 11.) Plaintiff was given an opportunity to view the unredacted report in person but was prohibited from taking notes. (*Id.* at 12.) NSTC M-1533.2E § 6-10 states that "[n]o later than five full business days . . . before the PRB is scheduled to convene, the recorder shall . . . [p]rovide the student with any and all documents that may be presented in the case against the student, including but not limited

1    to the PRB Convening Order, counseling sheets, witness statements, and a complete copy

2    of the preliminary inquiry (if any)." (Doc. 1-2 at 18.)

3         Following the first PRB, Colonel Shea issued a written no contact order which

4    prohibited Plaintiff from "hav[ing] any contact or communication whatsoever . . . unless

5    you first request and receive a waiver in writing from [Colonel Shea]" with "[a]ny

6    Midshipmen assigned to the NROTC, University of Arizona." (Doc. 1 at 13.) Plaintiff's

7    counsel stated at oral argument, however, that counsel has been able to speak with a key

8    witness in this matter. The no contact order expired on May 11, 2024. (Doc. 8 at 4.)

9         Lt. Mohan has been appointed as recorder (a role similar to a prosecutor in a

10    criminal case) for the second PRB. (*See* Doc. 2 at 9; Doc. 8 at 10.) NSTC M-1533.2E §

11    6-10(1) states that "[t]he PRB shall consist of at least three voting members . . . and one

12    non-voting member (officer or senior enlisted) to serve as the recorder." (Doc. 1-2 at 17.)

13    In other words, the recorder participates in the PRB but does not deliberate or vote. The

14    regulation further specifies that "[t]o avoid conflicts of interest, only persons who have

15    no involvement with the matters before the board may be appointed as voting members."

16    (*Id.* at 18.)

17         In his Complaint, Plaintiff raises three counts, each one grounded in a specific

18    regulatory violation that Plaintiff asserts must be resolved before any further PRB. (Doc.

19    1 at 16–19.) Count I alleges that Colonel Shea has deprived Plaintiff of his appellate

20    rights in violation of NSTC M-1533.2E § 6-13 and Appendices G and P by failing to

21    endorse the first PRB Report and terminating further review. (*Id.* at 16.) Count II alleges

22    that Colonel Shea must comply with NSTC M-1533.2E § 6-10(6)(a)(2) by providing

23    Plaintiff with an unredacted copy of the preliminary inquiry report. (*Id.* at 17–18.) And

24    Count III alleges that the no contact order interferes with Plaintiff's right under NSTC M-

25    1533.2E § 6-11(c) and Appendices F and P to present witnesses. (*Id.* at 18–19.) Plaintiff

26    explained at oral argument that Counts II and III are really contingent on Count I as these

27    are issues that he would seek to appeal to the NSTC Commander.

28         Plaintiff seeks a Temporary Restraining Order ("TRO") enjoining the second PRB

until (1) Colonel Shea endorses the first PRB Report and resumes the appellate process, (2) Plaintiff receives an unredacted copy of the preliminary inquiry report, and (3) plaintiff or his counsel is afforded a meaningful opportunity to speak with and request the testimony at the PRB of potential witnesses (i.e., lifting the no contact order entirely). (*Id.* at 20–21.) He avers that irreparable harm will occur to his psychological and emotional health if the second PRB proceeds as scheduled on May 16, 2024. (*Id.* at 14.) He argues that "[p]utting plaintiff through PRB #2, on these facts, has an increased risk of causing plaintiff's suicide due to the trauma plaintiff sustained from the unlawful first PRB . . . . The risk of these harms is near-certain going into PRB #2, unless plaintiff is armed with the rights that he is required to be afforded under NSTC M-1533.2E." (*Id.*)

## II.     Standard of Review

"The federal courts do not sit to run the [U.S. Navy]" and the military "is entitled to discharge an officer on grounds rationally related to the standards of fitness for retention in that branch of the service." *Denton v. Sec'y of the U.S. Air Force*, 483 F.2d 21, 24 (9th Cir. 1973). However, Article III courts "will review, without hesitation, cases in which it is alleged that the military violated the Constitution, applicable statutes, or its own regulations." *Cooney v. Dalton*, 877 F. Supp. 508, 512 (D. Haw. 1995) (quoting *Johnson v. Orr*, 617 F. Supp. 170, 172 (E.D. Cal. 1985)). In these rare circumstances, the Court has jurisdiction to review military discharge decisions if the plaintiff alleges (a) that the discharge violated his or her constitutional rights, federal statute, or military regulations, and (b) that he or she exhausted administrative remedies, unless exhaustion is excused. *Stein v. Dowling*, 867 F. Supp. 2d 1087 (S.D. Cal. 2012) (first quoting *Muhammad v. Sec'y of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985), then citing *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002)). There are four circumstances where exhaustion may be excused: "(1) if the remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised." *Muhammad*, 770 F.2d at 1495 (citing *Von Hoffburg*

1  *v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980)).

2      The substantive standards governing TROs and PIs are identical.  *See New Motor*
3  *Vehicle Bd. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1347 n. 2 (1977); *Los Angeles Unified*
4  *Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1982). "A preliminary
5  injunction is 'an extraordinary and drastic remedy, one that should not be granted unless
6  the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680
7  F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972
8  (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24
9  (2008) (citation omitted).

10     A plaintiff seeking a preliminary injunction must show that (1) he is likely to
11  succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3)
12  the balance of equities tips in his favor, and (4) an injunction is in the public interest.
13  *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions
14  going to the merits'—a lesser showing than likelihood of success on the merits—then a
15  preliminary injunction may still issue if the 'balance of hardships tips sharply in the
16  plaintiff's favor,' and the other two Winter factors are satisfied." *Shell Offshore, Inc. v.*
17  *Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild*
18  *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this variant of the
19  *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one
20  element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

21     For purposes of injunctive relief, irreparable harm means "harm for which there is
22  no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v.*
23  *Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "Because intangible injuries generally lack
24  an adequate legal remedy, 'intangible injuries [may] qualify as irreparable harm.'" *Id.*
25  (quoting *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597,
26  603 (9th Cir. 1991)). However, "[s]peculative injury does not constitute irreparable injury
27  sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v.*
28  *Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "A plaintiff must do more than merely

1  allege imminent harm sufficient to establish standing; a plaintiff must demonstrate

2  immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.*

3        In the military context, the test for injunctive relief is much more stringent than the

4  normal test for an injunction. *Sebra v. Neville*, 801 F.2d 1135, 1139 (9th Cir. 1986).

5  Under the *Mindes* Test, as modified by the Ninth Circuit, a plaintiff challenging a

6  military decision must not only allege that the decision violated military regulations and

7  that he exhausted available military remedies (or exhaustion is excused). *Wenger*, 282

8  F.3d at 1072. The plaintiff must also persuade the court that the following four factors

9  weigh in favor of judicial review—"(1) [t]he nature and strength of the plaintiff's claim;

10  (2) [t]he potential injury to the plaintiff if review is refused; (3) [t]he extent of

11  interference with military functions; and (4) [t]he extent to which military discretion or

12  expertise is involved." *Id.*

13  **III.    Discussion**

14        The Court has listened to both parties and carefully considered the atypical issues

15  presented in this case. As a threshold matter, the Court finds that this is one of the rare

16  circumstances in which it can review military matters because Plaintiff has sufficiently

17  alleged that there was a decision made that violated U.S. Navy regulations and that he is

18  excused from exhausting other administrative remedies (namely Article 138 of the

19  Uniform Code of Military Justice and the Board for Correction of Military Records)

20  because they would either be futile or not provide an opportunity for adequate relief

21  given the emergency posture. Furthermore, Plaintiff's primary argument is that the very

22  remedy he would normally rely on—the PRB Chain of Appeal—has been made

23  unavailable to him.

24        However, even assuming without deciding that the four remaining factors outlined

25  in *Mindes* and *Wenger* weigh in Plaintiff's favor, the Court cannot find that irreparable

26  harm exists such that this type of extraordinary injunctive relief is warranted. *See Winter*,

27  555 U.S. at 20.

28        The NSTC M-1533.2E does not explicitly permit convening a second PRB but it

1    also does not explicitly prohibit it. Nonetheless, at oral argument, Defendants represented

2    that the slate will be wiped clean with the second PRB, and it is as if, for purposes of any

3    disenrollment determination, the first PRB never happened. Therefore, the harm that

4    Plaintiff suffered as a result of the lack of due process in the first PRB cannot alone

5    constitute the basis for this Court granting injunctive relief interfering with military

6    procedure and enjoining the second PRB.

7              While the Court recognizes that significant emotional harm was done to Plaintiff

8    in the first PRB, it finds that the fear underlying Plaintiff's argument for why irreparable

9    harm is now imminent—i.e., a repeat of these circumstances—is too speculative to

10   warrant injunctive relief given that Plaintiff will now be represented by counsel who will

11   have the opportunity to argue and object to any failure to maintain decorum or abuse of

12   Plaintiff's rights. The Court further notes that the no contact order has expired, and

13   Plaintiff is no longer prevented from questioning witnesses at the PRB. Although, the

14   Court frowns upon the fact that an *unredacted* copy of the preliminary inquiry report was

15   not previously sent to Plaintiff, it finds that Plaintiff is now aware of the redacted

16   information—i.e., the names of potential witnesses. Indeed, his counsel has spoken to at

17   least one of them. The Court also has serious concerns about anyone who was involved in

18   the first PRB being involved in *any* capacity in the second PRB, but it must recognize

19   that the NSTC M-1533.2E only prohibits these individuals from serving as voting

20   members, not recorders.

21             Furthermore, Defendants averred that even if the second PRB were to similarly

22   recommend disenrollment, no such discipline would take effect until the NSTC

23   Commander made a final determination, as is the procedure contemplated in the NSTC

24   M-1533.2E. After the PRB Report, PNS Endorsement, and subsequent review, Plaintiff,

25   via counsel, will have the opportunity to submit his objections and have the matter heard

26   by the NSTC Commander. In the meantime, Plaintiff will continue in the NROTC at the

27   University of Arizona and can resume his studies.

28             Accordingly, in the absence of irreparable harm, the Court cannot issue a TRO.

1   The Court finds it unnecessary to further address the remaining factors.

2   **IV.    Conclusion**

3   For the foregoing reasons,

4   **IT IS ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining
5   Order, Emergency Motion for Leave of Court to Exceed Page Count, and Motion for
6   Order to Show Cause Why Preliminary Injunction Should Not Issue is **GRANTED IN**
7   **PART AND DENIED IN PART.** (Doc. 2.) The Emergency Motion for Temporary
8   Restraining Order and Motion for Order to Show Cause Why Preliminary Injunction
9   Should Not Issue are **DENIED**. The Emergency Motion for Leave of Court to Exceed
10  Page Count is **GRANTED**. Having declined to issue the relief sought, this matter is now
11  closed, and the Clerk of Court shall docket accordingly.

12  Dated this 14th day of May, 2024.

13

14

15

16  Honorable Raner C. Collins
17  Senior United States District Judge

18

19

20

21

22

23

24

25

26

27

28